## Bankard, Appellant, *v.* Shaw.

199    623
41SC² 41

*Married women—Power to contract—Separate estate.*

Under the Act of April 11, 1848, P. L. 536, a married woman could, in 1883, contract for the erection of a house on her separate estate.

Where a contract for the erection of a house on the separate estate of a wife is signed by the husband alone, but the wife is present at the execution of the contract and participates in settling its terms, and subsequently directs the work under it, the law will presume that the husband was acting as his wife's agent in signing the contract, and will imply a contract on her part to pay for the house.

*Statute of frauds—Conveyance of property—Married women—Mechanic's lien.*

Where a married woman contracts for the erection of a house on her separate estate, and a mechanic's lien is filed against the property, and subsequently a sci. fa. on the lien is settled by the owner giving a note, and judgment is obtained by suit on the note, execution may be had against the property under the judgment, although the owner conveyed it for a nominal consideration to her children by a deed executed and delivered after the mechanic's lien was filed, but before the note was given.

Argued May 14, 1901. Appeal, No. 275, Jan. T., 1901, by plaintiffs, from judgment of C. P. Fayette Co., June T., 1898, No. 301, on verdict for defendant in case of Minnie Birch Bankard *v.* Eliza Shaw and B. K. Shaw. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Ejectment for two lots in the borough of New Haven. Before UMBEL, J.

At the trial it appeared that on May 3, 1883, Lindsey Warman et ux. conveyed the lots in controversy to Sarah E. Birch; on June 30, 1883, Samuel Birch, husband of Sarah E., signed a written contract with James Calhoun & Company, providing for the erection of a dwelling house on the same, on the completion of which, there was a balance claimed by the contractors of $379.22, for which a mechanic's lien was filed January 22, 1884, at No. 766, mechanic's lien docket, on which a sci. fa. was issued at No. 289, September term, 1885, and was regularly prosecuted until it was on the list for trial at March term, 1888, and then as appears of record was "settled," but was not, nor has it ever been satisfied. By deed dated May 3, 1887, and acknowledged June 3, 1887, Sarah E. Birch et al., conveyed the said premises to Minnie Birch et al., children of the grantors and plaintiffs herein, for the consideration of $1.00; which deed was recorded January 16, 1888. The settlement of the sci. fa. was affected by Sarah E. Birch giving her note March 13, 1888, to Calhoun & Company for the balance due ($287.32) and on her failure to pay the same, they sued and recovered judgment, and on April 4, 1890, issued a vend. ex., and sold the said lots May 10, 1890, as the property of Sarah E. Birch to Eliza Shaw, for the consideration of $800, and after payment of costs and the judgment debt and other liens, a balance of $331.98 was distributed to Mrs. Birch. The plaintiffs herein

claim title under the conveyance to them of June 3, 1887; the defendants under the said sheriff's sale, in pursuance of which a deed was duly executed and acknowledged December, 1890.

Verdict for defendants.

On a rule for a new trial UMBEL, J., filed the following opinion:

1. Sarah E. Birch being a married woman in 1883, was she capable of contracting such debt as the one for which the mechanic's lien in question in this case was filed?

It is well settled that under the common law, Mrs. Birch was not capable of contracting such debt, and whatever ability she possessed in that regard in 1883, was due to the provisions and constructions of the Act of April 11, 1848, P. L. 536, which act provides, inter alia, "all such property of whatever name or kind which shall accrue to any married woman during coverture, by law, descent, deed of conveyance or otherwise shall be owned, used and enjoyed by such married woman as her own separate property." This act was passed for the purpose of increasing the rights and enlarging the powers of married women, and the courts have given it a construction in harmony with such purpose.

If the words "own, use and enjoy" mean anything, it is more than merely the right to hold the title to real estate without the rights to improve, repair or cultivate it. A reasonable and the most conservative construction carries with it these rights, and they must necessarily authorize and empower the person who owns, uses and enjoys such real estate to contract such obligations as attend such improvements as are necessary to adapt the premises to the uses and wants of the owner. To say that a married woman shall not have the power under the act of 1848, to contract for such necessary improvements is to say that she shall not have the ordinary means of controlling, using and enjoying her separate estate, and thus the very spirit and intention of the act are destroyed. Her power to contract for improvements as well as for repairs, is inseparably incident to her right to take and hold real estate for her own use; consequently in 1883, Mrs. Birch was capable of contracting for the erection of a house on her separate estate: Lippincott v. Hopkins, 57 Pa. 328; Lippincott v. Leeds, 77 Pa. 420; Appeal

of Germania Savings Bank, 95 Pa. 329; Botts v. Knabb, 116 Pa. 28.

2. If she were able to contract such debt, was her conduct such as to make the agreement of June 30, 1883, signed by James Calhoun & Company and Samuel Birch and offered in evidence January 24, 1900, as "Exhibit No. 1," her contract, and was the debt so contracted an existing liability at the time she conveyed the premises to her children?

H. M. Kerr testified that he was a member of the firm of James Calhoun & Company; that he wrote the contract in question; that it was with both of them (Mr. and Mrs. Birch), although the written one was signed by only Mr. Birch; that he had preliminary talks with Mr. and Mrs. Birch before the contract was signed, and that Mrs. Birch was present when it was signed, and that she was frequently present during the erection of the house, and that she did most of the talking in giving directions, etc., while the work was going on; that changes were made at her suggestion, and that Mr. Birch stated in the presence of Mrs. Birch that the building was for her.

W. D. McDowell, who was another member of the firm of Calhoun & Company, testified that he was present when the contract was signed; that Mr. and Mrs. Birch came to the office of Calhoun & Company indicating that they wanted a house built; that Mrs. Birch did the principal part of the talking and was present when the agreement was signed, and at that time said she had other property and could make larger payments than were called for in the contract.

This testimony is not denied, and it was sufficient to satisfy the jury that notwithstanding the contract was signed by Samuel Birch, her conduct was such as to make it her contract for the improvement of her separate estate.

Einstein v. Jamison, 95 Pa. 403, was a scire facias on a mechanic's lien. The property was owned by the wife. The contract was made by her husband, the wife was present and knew of it and directed the work. The defense was that she had not contracted and was not liable to pay for the work. In this case the Supreme Court says: "The contractor testified that Mrs. Jamison was present during a part of the time the contract for the work was being made; that during its progress she came to his house to get him to do the work, and several

times sent after him to come and do it. She was frequently present directing as to the manner in which she desired the work done, and told him when she would make payment. . . . While the courts should carefully protect married women in the enjoyment of their separate property, and not permit it to be unjustly charged with an incumbrance, yet they should not be permitted to enhance the value of their property at the expense of an innocent and confiding contractor. If the materials were furnished and used in the improvement of her property by her directions, or with her knowledge and assent and were reasonably necessary, and there was no agreement that her property should not be liable therefor, the law will give a lien thereon for the value of the materials."

Beran v. Thackara, 143 Pa. 182, was a sci. fa. on mechanic's lien. Mrs. Thackara was the owner of the property. A contract was in writing made by her husband of one part, and Kitzelman, contractor, of the other part. The plaintiff had furnished material to the contractor for the house. The court below found in favor of the plaintiff. On appeal, the Supreme Court said (198): " One general ground of defense, in the court below was, that under the evidence there could be no recovery for any part of the materials, mainly because the contracts were with the husband alone, and Mrs. Thackara, owner of the lot, was not a party thereto . . . . (199): It was erected under a contract made with the husband, and as the facts abundantly show, with the knowledge, approbation and concurrence of the wife. It is true the husband made the contract in his own name, but the building contracted for was, with the knowledge and concurrence of the wife, designed and erected for her ; and therefore, in making the contract the husband may be regarded in law as the agent of the wife, as much so as if he had avowedly acted by her express authority : " Forrester v. Preston, 2 Pitts. Rep. 298 ; Jobe & Meanor v. Hunter, 165 Pa. 5 ; Brumbaugh's Assigned Estate, 8 Pa. Superior Ct. 292.

Under the testimony in this case the jury were clearly warranted in determining that the contract was entered into, the materials furnished and the work done with the knowledge, approbation and concurrence of Mrs. Birch ; and under such facts the law will presume that her husband was acting as

her agent and will imply a contract by her to pay for the improvements thus placed on her separate estate, and the unpaid balance on the aforesaid mechanic's lien was an existing liability of Mrs. Sarah Birch, June 3, 1887, the date of the voluntary conveyance.

3. Does the voluntary conveyance of June 3, 1887, recorded in deed book 75, page 275, come within the statute of 13 Elizabeth?

On the trial of this case it was admitted by plaintiffs' counsel that if there was any existing debt of Mrs. Birch due James Calhoun & Company, at the time of the execution of the voluntary conveyance to her children and the collection of said debt delayed, hindered or defeated thereby, such deed would be void and would come within the " statute of fraudulent conveyances," which provides, inter alia, that all lands conveyed with intent to delay, hinder or defraud creditors shall be " utterly void, frustrate and of none effect, in pretense, color, feigned consideration, expression of use or any other matter or thing to the contrary notwithstanding : " Thomson v. Dougherty, 12 S. & R. 448 ; Geiger v. Welsh, 1 Rawle, 349 ; Brown v. McCormick, 135 Pa. 434 ; Marshall v. Roll, 139 Pa. 399.

Therefore as to debt of Calhoun & Company, represented by the aforesaid mechanic's lien, this voluntary conveyance is void and comes within the statute of 13 Elizabeth.

It is contended on behalf of the plaintiffs that this case comes within the rule which holds that a judgment against a married woman could be taken only for necessaries contracted for by herself, or in some of the cases enumerated by the act of assembly, and that the facts to fix her liability must affirmatively appear on the record : Dorrance v. Scott, 3 Wheat. 309 ; Hecker v. Haak et al., 88 Pa. 238 ; Hugus & Hacke v. Dithridge Glass Co., 96 Pa. 160.

It is not within our province at this time, nor do we undertake to pass on the legality and regularity of the mechanic's lien filed January 22, 1884, at No. 766, but having determined that the debt for which it was entered was a liability of Mrs. Birch and contracted for by her through her agent, for the improvement of her separate estate within the provisions of the act of 1848, advantage of the aforesaid rule, if she wished to avail herself of it, should have been taken by her on an appli-

cation to strike off the mechanic's lien, or on the trial of the
sci. fa., but she not only did nothing of that kind, but recog-
nized the same as legal and valid, made payments on account
thereof, and in 1888, after the passage of the act of June 3,
1887, while Calhoun & Company were prosecuting their sci.
fa., and when she unquestionably was able to give a valid ob-
ligation for the improvement of her separate estate, she recog-
nized her liability, ratified all that had gone before and settled
the sci. fa. proceeding by giving her note for the balance due,
and as is said in Swayne v. Lyon, 67 Pa. 440, " When the law
makes her " (married woman) " competent to contract in any
particular case, it clothes her, as a logical consequence, with
all the capacity necessary to give a full remedy to the party
with whom she contracts."

Under Shryock v. Buckman, 121 Pa. 255, no doubt the me-
chanic's lien in this case was defective, and upon the trial of
the sci. fa. Mrs. Birch, upon plea and due proof of coverture
would have been entitled to judgment, but no such plea was
interposed.  The plaintiffs herein claiming that in consequence
of it appearing on the face of the mechanic's lien that Sarah E.
Birch was a married woman, such plea was unnecessary.  How-
ever, no fraud or mistake being alleged in this case, the action
of Mrs. Birch in recognizing the claim and giving her note
therefor, March 13, 1888, is such ratification and recognition of
her liability for the improvement of her separate estate as to
take it out of the operation of the rule claimed on behalf of the
plaintiffs.

In Real Estate Company v. Roop, 132 Pa. 496, after discuss-
ing the act of 1887, which was in force when the note in ques-
tion was given, the chief justice says, the act unfetters a mar-
ried woman " for three purposes, viz: (*a*) Where she engages
in trade or business ; (*b*) in the management of her separate
estate; and (*c*) for necessaries.  For any of these purposes
she may bind herself and her estate or business by her contracts,
and I have no doubt may lawfully confess a judgment.  But
beyond this we do not think the act confers any power.  It is
entirely proper that the law should clothe her with sufficient
power to properly manage her separate estate ; and when it au-
thorizes her to embark in business, it is right that she should

be held to her contracts, which can only be done by authorizing her to make such contracts."

In view of which, suppose Mrs. Birch on March 13, 1888, had given to Calhoun & Company her judgment note instead of the one she did, if the debt were for the improvement of her separate estate, could it be questioned but that when the note came due Calhoun & Company could have secured judgment thereon and under proper proceedings, the sheriff could have sold any of the separate estate of Mrs. Birch and given to the purchaser such title as Mrs. Birch had thereto at the time of sale, the only difference between which and this case would be in the manner of securing judgment, the regularity of which at No. 408, September term, 1888, is not questioned. We are therefore of opinion that this part of plaintiff's contention is also without merit: Patrick & Co. v. Smith, 165 Pa. 526 ; Kuhn v. Ogilvie, 178 Pa. 303.

*Error assigned* inter alia was in refusing to give binding instructions for the plaintiffs.

*Edward Campbell*, with him *R. P. Kennedy*, for appellants, cited Harper v. O'Neil, 194 Pa. 141.

*William C. McKean* and *William A. Hogg*, for appellees, were not heard but cited Lippincott v. Hopkins, 57 Pa. 328 ; Botts v. Knabb, 116 Pa. 28 ; Lippincott v. Leeds, 77 Pa. 420 ; Appeal of Germania Savings Bank, 95 Pa. 329 ; Einstein v. Jamison, 95 Pa. 403 ; Bevan v. Thackara, 143 Pa. 182 ; Brumbaugh's Assigned Est., 8 Pa. Superior Ct. 292.

PER CURIAM, May 27, 1901 :
The judgment is affirmed on the opinion of the court below.